AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Middle District of Florida on the following

☒ Trademarks or ☐ Patents . ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 6:26-cv-02240-PGB-CAB | 9/25/2026 | Middle District of Florida, Orlando |

| PLAINTIFF | DEFENDANT |
|---|---|
| Smile More Intellectual Holdings, LLC | American Eagle Outfitters, Inc., et al |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 See attached. | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| Megan Mann | MLB | 9/28/2026 |

**Copy 1—Upon initiation of action, mail this copy to Director Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director Copy 4—Case file copy**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| SMILE MORE® INTELLECTUAL HOLDINGS, LLC,<br>Plaintiff,<br>vs.<br>AMERICAN EAGLE OUTFITTERS, INC., a Delaware Corporation, and THE SMILEY COMPANY D/B/A THE SMILEY COMPANY SPRL A/K/A SMILEYWORLD LIMITED,<br>Defendants | Case No.:<br>**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNAUTHORIZED USE**<br>**DEMAND FOR JURY TRIAL**<br>District Court Judge:<br>Courtroom Number: |

Plaintiff, SMILE MORE® INTELLECTUAL HOLDINGS LLC ("SMILE MORE®"), hereby sues Defendants, AMERICAN EAGLE OUTFITTERS INC. ("AEO"); and THE SMILEY COMPANY D/B/A THE SMILEY COMPANY SPRL A/K/A SMILEYWORLD LIMITED ("SMILEY"); and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for infringement of Plaintiff's trademarks registered with the United States Patent and Trademark Office ("USPTO") as U.S. Trademark Registration Nos. 4993299 and 4695492 under 15 U.S.C. § 1114, for Unfair

Competition and False Designation of Origin under 15 U.S.C. § 1125(a), for Dilution under 15 U.S.C. § 1125(c), for unfair competition under Florida common law, for unjust enrichment (equitable claim), and for deceptive and unfair trade practices under Florida Statutes §§ 501.201 *et. seq.*

## THE PARTIES

2. Plaintiff, SMILE MORE®, is a Florida Limited Liability Company having a principal place of business at 407 Wekiva Springs Road Ste. 217, Longwood, FL 32779.

3. Defendant, AEO, is a Delaware corporation having a principal place of business at Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

4. Defendant, SMILEY, is a company headquartered in London, United Kingdom, with a principal place of business at The Leathermarket, Lafone House, Unit 4.1, 11/13 Weston Street, London, SE1 3ER, GB.

5. On information and belief, Defendant AEO operates a website www.ae.com, which offers clothes and other apparel/merchandise to be sold to the public as well as physically in its AEO storefronts nationwide.

6. On information and belief, Defendant, SMILEY, operates a website www.smiley.com, which offers clothes and other apparel/merchandise to be sold to the public.

7. On information and belief, Defendant, SMILEY, partnered with Defendant, AEO (collectively the "Defendants"), to sell clothing items and other merchandise on the AEO website as well as physically in AEO storefronts nationwide.

**JURISDICTION AND VENUE**

This is an action for trademark infringement and unfair competition under the trademark laws of the United States, 15 U.S.C. § 1 *et. seq.*, and particularly 15 U.S.C. §§ 1114, 1125(a), 1125(c), and 1125(d), and the statutory and common laws of the State of Florida.

8. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 29 U.S.C. §§ 1331 and 1338(a) and (b) because this action arises under the trademark laws of the United States, and particularly 15 U.S.C. §§ 1114, 1125(a), 1125(c), and 1125(d). This Court has supplemental subject matter jurisdiction of the state-law claims in this action pursuant to 28 U.S.C. § 1367 and 1338 and the doctrines of pendent and ancillary jurisdiction because the state-law claims are so related to the federal claims that they form part of the same case or controversy.

9. This Court has personal jurisdiction over AEO because, on information and belief, it has contacts with and conducts and transacts business in the State of Florida, and within this district, purposely availing itself of the opportunity to conduct commercial activities in this judicial district, and Plaintiff's claims arise, in part, out of the acts that AEO purposefully directed at Florida and this district, and has further alleged herein.

10. This Court has personal jurisdiction over SMILEY because, on information and belief, SMILEY contacts with and conducts and transacts business in the State of Florida and within this district, purposely availing itself of the opportunity to conduct commercial activities in this judicial district, and Plaintiff's claims arise, in part, out of the acts that SMILEY purposefully directed, orchestrated, and benefitted from within Florida and this district, and as further alleged herein.

11. Venue in the United States District Court for the Middle District of Florida, Orlando Division, is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## SMILE MORE'S® BUSINESS

12. SMILE MORE®, is a limited liability company, operating as an intellectual property holding company for the SMILE MORE® brand and its relevant trademarks, assignments, etc.

13. SMILE MORE® is owned by Roman Atwood ("Mr. Atwood").

14. U.S. Trademark Registration Nos. 4993299 and 4695492 (collectively "registrations") are owned by SMILE MORE®, and have registration dates of March 3, 2015, and July 5, 2016.

15. The 4993299 is registered in the international classes for 003, 021, and 025 for temporary tattoos, cups, water bottles sold empty, hats, and one-piece play suits, and lists a first use in commerce of September 1, 2013.

16. The 4695492 is registered in the international classes for 016, 018, 025, 035 for pens, rubber bands, stickers, backpacks, beanies, shirts, tank tops, and on-line retail store services featuring apparel and clothing, and lists a first use in commerce of September 1, 2013.

17. Both registrations also state that the mark's literal element is SMILE MORE® and the mark consists of standard characters without claim to any particular font style, size, or color.

18. SMILE MORE® owns and manages the intellectual property, licenses those rights to operating companies that manufacture, market, and to sell its licensed merchandise, and serves as the legal owner of the trademarks and other intellectual property.

19. SMILE MORE® has actively maintained and protected its trademark rights related to its brand.

20. As such, SMILE MORE®'s ownership of the brand and associated trademarks are incontestable.

21. SMILE MORE® initially began selling its merchandise on October 9, 2013, through the Shopify platform.

22. On May 7, 2022, SMILE MORE® began exclusively selling its branded merchandise in all 50 states in the United States, including Florida, through Bunker Branding, LLC.

23. Bunker Branding, LLC, is the only authorized distributor and retailer to sell SMILE MORE® licensed merchandise.

24. SMILE MORE® sells merchandise in the form of hats, shirts, tank tops, blankets, hoodies, beanies, cups, backpacks, etc., to consumers all over the United States.

25. SMILE MORE® is the owner of substantial trademark rights concerning its marks and has maintained an exclusive license as to said rights for use in association with applicable merchandise.

26. As a result, the marks have become a valuable asset of SMILE MORE® and Mr. Atwood in the merchandise industry.

27. SMILE MORE® was created in 2013 by Mr. Atwood in connection with his YouTube® channel consisting of daily family vlogs and prank videos. Mr. Atwood frequently stated the phrase SMILE MORE® in his videos as a reminder to stay positive despite life's challenges.

28. Mr. Atwood built a brand around SMILE MORE® in order to sell merchandise to his ever-growing YouTube® and social media fan base as YouTube® had become his career.

29. Currently, Mr. Atwood has over 15 million subscribers on YouTube® between two different channels, one for his vlogs and one for pranks, where his SMILE MORE® is heavily portrayed and marketed.

30. SMILE MORE® was created to spread positivity among Mr. Atwood's viewers and to promote a positive way of thinking.

31. Mr. Atwood first obtained a USPTO issued registration number for SMILE MORE® in 2015.

32. As a result of years of use and exclusive offering for the brand, SMILE MORE®, not to mention Mr. Atwood's nationwide recognition amongst consumers for his Youtube and social media presence; SMILE MORE® is widely recognized by the general public and its fans as belonging to Mr. Atwood.

33. Pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) both the 4993299 and '4695492 registrations are incontestable.

34. Copies of the U.S. Trademark Registrations referenced above are attached as Exhibit "A" and "B". SMILE MORE®'s pertinent United States Trademark Registrations are listed in the following table:

| **Mark** | **Registration No.** | **Registration Date** | **Date of First Use in Commerce** |
|---|---|---|---|
| SMILE MORE | 4695492* | 03/03/2015 | 09/01/2013 |
| SMILE MORE | 4993299* | 07/05/2016 | 09/01/2013 |

The registrations denoted by an asterisk (*) above are incontestable in accordance with 15 U.S.C §§ 1065 and 1115(b) and constituted conclusive evidence of SMILE MORE®'s exclusive rights to use those marks in connection with the goods listed in those registrations.

35. SMILE MORE® has been continuously using its marks for goods and services, including but not limited to, merchandise sales in interstate commerce since at least September 2013, and has continued to use said marks with additional goods since that time.

36. The registrations noted above constitute *prima facie* evidence of the protectability, validity, and SMILE MORE®'s exclusive right to use its marks on goods and services, including but not limited to, merchandise sales throughout the United States.

37. SMILE MORE® has an expansive presence in interstate commerce.

38. SMILE MORE® serves customers in all 50 states of the United States of America.

39. SMILE MORE® has sold its merchandise exclusively through Bunker Branding, LLC, since May 7, 2022.

40. As a result, the SMILE MORE® marks represent substantial goodwill in the operations of its business in the United States and throughout the world.

41. Accordingly, SMILE MORE® has made substantial efforts to establish and maintain significant consumer goodwill in its many good offered under its marks through the United States, including but not limited to, merchandise sales and protecting its mark through cease & desists to remove unlicensed products attempting to benefit on its brand without direct authorization, license, or approval from SMILE MORE® itself.

42. SMILE MORE®'s marks are distinctive, well known and famous.

**AMERICAN EAGLE OUTFITTERS, INC.'s, AND THE SMILEY COMPANY D/B/A THE SMILEY COMPANY SPRL A/K/A SMILEYWORLD LIMITED BUSINESS**

43. AEO has sold and currently sells clothes and other apparel/merchandise products under the name American Eagle®.

44. SMILEY has partnered to sell and currently sells clothes and other apparel/merchandise products under a collaboration with AEO.

45. Defendants' current merchandise sales include the following branding:






46. Defendants' collaborative website at https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 displays:




47. Defendants' collaborative website at https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 displays:



48. The images shown above are the first impressions the public sees when visiting the Defendants' collaborative website at https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006.

49. Defendants are using a variant of the SMILE MORE® marks containing a "Smiley Face®" in place of the "O" on their collaborative clothing products; specifically depicted as: Smile M☺re.

50. Defendants' use of the SMILE MORE® marks is prominent in its branding on the above-referenced merchandise.

51. To reemphasize, SMILE MORE® owns the Standard character claim for its marks. Meaning that SMILE MORE® owns the "standard characters without claim to any particular font style, size or color." Including but not limited to any variation of its marks, including but not limited to, the variation used by the Defendants in their merchandise collaboration.

52. SMILE MORE®'s trademarks and Defendants' use of the "Smile M☺re" name are used on identical goods, namely merchandise listed for sale, including but not limited to, clothing.

53. Defendants' use of the "Smile M☺re" name creates an identical and confusing commercial impression to SMILE MORE®'s marks.

54. Defendants' use of the "Smile M☺re" brand creates a commercial impression confusingly similar to SMILE MORE®'s marks.

55. Defendants' use of the https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-

sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 domains create a commercial impression confusingly similar to SMILE MORE®'s marks.

56. SMILE MORE®'s marks and Defendants' use of the "Smile M☺re" brand name are identical in appearance, sound, connotation and commercial impression.

57. Merchandise goods, including but not limited to clothing, bearing SMILE MORE®'s marks and Defendants' merchandise products being sold using the brand name "Smile M☺re" both travel in the same established, likely-to-continue trade channels, including, but not limited to, e-commerce.

58. Upon information and belief, Defendants intend to derive benefit from the reputation of SMILE MORE®'s marks by adopting identical and confusingly similar brands and web domains for the sale of goods and services, including but not limited to, clothing merchandise products.

59. There is likelihood of confusion as to the source or sponsorship of the goods that Defendants are profiting on under the "Smile M☺re" brand name because the name is confusingly similar to SMILE MORE®'s marks. Please see attached composite Exhibit "C".

60. Defendants are operating as collaborators and control the actions of the other as partners in their collaboration.

61. Defendants are not authorized by SMILE MORE® to use its marks or any similar name or design for products or services, including, but not limited to, merchandise sales.

62. Defendants' infringement of SMILE MORE®'s trademark rights creates confusion in the marketplace and damages its goodwill, causing irreparable harm to SMILE MORE®'s business.

63. Defendants' infringing use of the "Smile M☺re" brand name has threatened SMILE MORE® with loss of control over its reputation in the marketplace, and the

value of its trademarks.

64. On information and belief, Defendants are aware of SMILE MORE®'s business and its marks before they engaged in the infringing activities and adopted the infringing "Smile M☺re" brand name.

65. On information and belief, Defendants copied SMILE MORE®'s marks with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill and reputation of Plaintiff.

66. On information and belief, Defendants' infringement of SMILE MORE®'s rights is intentional and Defendants have acted, and are continuing to act, with knowledge of SMILE MORE® and its rights in the trademarks.

67. On information and belief, Defendants have a bad faith intent to profit from the sale of merchandise products bearing the name "Smile M☺re" by creating an association with SMILE MORE®'s marks as to source or sponsorship.

68. Defendants selected and adopted the marks used for its business and orchestrated and control the current operation. Defendants have, and will continue, to receive a direct benefit from the infringing activities.

69. Defendants' actions as described herein have caused and continue to cause irreparable injury to, and a likelihood of dilution of the distinctive quality of SMILE MORE®'s famous marks.

70. Defendants' wrongful use of SMILE MORE®'s famous trademarks are likely to dilute the distinctive nature of those marks and to blur the product association or tarnish the reputation built with the marks.

71. Defendants used, and continue to use, in commerce the SMILE MORE®'s marks and/or closely similar marks willfully and with the intent to dilute the marks; and with the intent to trade on the reputation and goodwill of SMILE MORE®'s marks.

72. Prior to filing this lawsuit, SMILE MORE®, through its legal counsel, demanded in writing multiple times that Defendants cease their infringement of its marks. Please see attached composite Exhibit “D”.

73. Defendants have refused to fully comply with Plaintiff’s demands. Defendants have refused to cease all use of the “Smile M☺re” brand name and have refused to account for Defendants’ infringing sales.

74. Specifically, Defendants in their response, dated June 2, 2026, to Plaintiff’s Demand state: “Your letter states that ‘[e]ven one consumer congratulated Mr. Atwood on his ‘partnership with American Eagle.’ However, you omitted crucial context making clear that this is yet another example of a Roman Atwood fan who understands that AE has not partnered with Atwood, as shown below.” An excerpt from this response is reflected below.

Your letter states that “[e]ven one consumer congratulated Mr. Atwood on his ‘partnership with American Eagle.’” However, you have omitted crucial context making clear that this is yet another example of a Roman Atwood fan who understands that AE has not partnered with Atwood, as shown below.



75. Defendants' actions were and continue to be taken in willful and malicious disregard of SMILE MORE®'s rights.

76. Defendants' infringing activities have caused SMILE MORE® monetary harm and they have been damaged.

77. Defendants' unauthorized use of SMILE MORE®'s trademarks is a deceptive practice that has an adverse impact on the public interest.

78. By virtue of Defendants' actions described herein, SMILE MORE® is being irreparably harmed and does not have an adequate remedy at law because its special interests in protecting the integrity of its trademarks and in preventing customer confusion are being seriously threatened.

79. As referenced in paragraph 74, and the subsequent excerpt of Defendants' response to Plaintiff's Demand Letter, actual confusion of purchasers has already occurred, and will continue to occur in the future, unless Defendants are enjoined from continuing their unlawful conduct. Fans on social media have congratulated Mr. Atwood on SMILE MORE®'s partnership with Defendants and another fan has stated that Mr. Atwood has lost their business pursuant to a perceived partnership.

80. SMILE MORE®'s irreparable injury also includes, without limitation, harm to the value of its goodwill and business reputation and their ability to exclusively maintain their trademarks to the exclusion of all others.

81. Defendants are also irreparably harming the ability of SMILE MORE® to maintain their relationships with their existing and identifiable prospective customers and with their distributors and retailers.

82. SMILE MORE® is likely to succeed on the merits of their claims. In fact, SMILE MORE® has already succeeded in a similar claim directly with the United States Patent and Trademark Office bearing Cancellation No. 92062027. In a similar claim the Court found that Mr. Atwood's YouTube® channels containing iterations,

mention, phrases, etc., constituted as secondary meaning, and that secondary meaning applied, as to the SMILE MORE®'s marks. Please see attached Exhibit "E".

83. The public interested would be served by the granting of injunctive relief. Prohibiting injunctive relief will cause irreparable harm to SMILE MORE®.

84. SMILE MORE® has hired the undersigned law firm and has obligated themselves to pay a reasonable attorney's fee.

85. All conditions precedent to the bringing of this action have occurred, have been performed, have been fulfilled, or have been waived.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REGISTRATION NO. 4695492**

86. SMILE MORE® hereby incorporates paragraphs 1-76 above as if fully set forth herein.

87. This count is against all Defendants for infringement of a federally registered trademark pursuant to 15 U.S.C. § 1114.

88. Defendants' conduct, including their unauthorized use of the SMILE MORE® mark constitutes trademark infringement of its registered marks of the U.S. Trademark Registration No. 4695492 in violation of 15 U.S.C. § 1114 by creating, and continuing to create a likelihood of confusion with the Plaintiff's registered mark.

89. On information and belief, Defendants were aware of SMILE MORE®'s business and its mark before it engaged in the infringing activities and adopted the infringing brand.

90. On information and belief, Defendants used the brand confusingly similar to SMILE MORE®'s mark with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill

and reputation of the Plaintiff.

91. As a direct and proximate result of the Defendants' actions, SMILE MORE® has been damaged.

92. As a direct and proximate result of Defendants' actions, SMILE MORE® has been irreparably harmed, including damage to its business and reputation, and will continue to be irreparably harmed unless and until Defendants cease use of the infringing brand.

**COUNT II – FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REGISTRATION NO. 4993299**

93. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as fully set forth herein.

94. All conditions precedent to the bringing of this action have occurred, have been performed, have been fulfilled, or have been waived.

95. This count is against all Defendants for infringement of a federally registered trademark pursuant to U.S.C. § 1114.

96. Defendants' conduct, including their unauthorized use of the "Smile M☺re" brand name and the https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 domains as a source designator for merchandise goods and services, including but limited to, clothing apparel, constitutes trademark infringement of SMILE MORE®'s registered mark of U.S. Trademark Registration No. 4993299 in violation of 15 U.S.C. § 1114 by creating, and continuing to create a likelihood of confusion with Plaintiff's registered mark.

97. On information and belief, Defendants used the "Smile M☺re" brand name

and website domains confusingly similar to SMILE MORE®'s mark with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill and reputation of Plaintiff.

98. As a direct and proximate result of Defendants' actions, SMILE MORE® has been damaged.

99. As a direct and proximate result of Defendants' actions, SMILE MORE® has been irreparably harmed, including damage to its business and reputation, and will continue to be irreparably harmed unless and until Defendant ceases use of the infringing "Smile M☺re" brand name and related domains used for e-commerce purchase of the infringing merchandise.

**COUNT III – FALSE DESIGNATION OF ORIGIN, TRADEMARK INFRINGEMENT AND UNFAIRE COMPETITION UNDER 15.S.C. §1125(a)**

100. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as fully set forth herein.

101. This count is against all Defendants for infringement of common law trademark rights, for false designation of origin and unfair competition pursuant to 15 U.S.C § 1125(a).

102. Defendants' conduct, including its use of the "Smile M☺re" brand and https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 domains as source designators for consumer purchase of goods and services, including but not limited to, clothing apparel, and false designation of origin in violation of 15 U.S.C § 1125(a) by creating, and continuing to create a likelihood of confusion with SMILE MORE®'s marks and related trademark rights in its brands, configurations,

and merchandise sales for goods and services.

103. Defendants' conduct set forth above is also likely to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with SMILE MORE® and its marks, or as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of 15 U.S.C. § 1125(a).

104. On information and belief, Defendants were aware of SMILE MORE®'s business and its marks before they engaged in the infringing activities and adopted the infringing "Smile M☺re" brand, and Defendants knew of SMILE MORE®'s marks and related trademark rights in its brands, configurations, and merchandise sales for goods and services related to SMILE MORE®'s business before Defendants' own adoption and use of the "Smile M☺re" brand.

105. On information and belief, Defendants substantially copied SMILE MORE®'s marks and related trademark rights in its use of the "Smile M☺re" brand, configurations, and merchandise sales, including but not limited to clothing apparel, with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill and reputation of Plaintiff.

106. As a direct and proximate result of Defendants' actions, SMILE MORE® has been damaged.

107. As a direct and proximate result of Defendants' actions, SMILE MORE® has been irreparably harmed, including damage to its business and reputation, and will continue to be irreparably harmed unless and until Defendants cease use of the "Smile M☺re" brand on its merchandise sales for goods and services, including but not limited to, clothing apparel.

**COUNT IV – TRADEMARK DILUTION**
**UNDER 15 U.S.C. §1125(c)**

108. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as fully set forth herein.

109. This count is against all Defendants for dilution pursuant to 15 U.S.C. § 1125(c).

110. One or more of the SMILE MORE® marks have become famous and distinctive in the United States and worldwide due to the extensive, continuous, and exclusive use of the marks in connection with SMILE MORE®'s merchandise.

111. Despite knowledge of SMILE MORE®'s famous trademarks, Defendants, used and continue to use in commerce copies thereof and spurious and colorable imitations thereof in connection with the advertisement, promotion, and sale of its clothing and merchandise, including but not limited to, the pictures of clothing items referenced above in this Complaint.

112. Defendants' actions as described herein have caused and continue to cause irreparable injury to, and a likelihood of dilution of the distinctive quality of the famous SMILE MORE® marks in violation of Plaintiff's rights under 15 U.S.C. § 1125(c). Defendants' wrongful use of the SMILE MORE® marks is likely to dilute the distinctive nature of those marks and to blur the product association or tarnish the reputation built with the marks.

113. Defendants used and continue to use in commerce the SMILE MORE® marks and/or closely similar marks willfully and with the intent to dilute the marks, and with the intent to trade on the reputation and goodwill of SMILE MORE® and its marks. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

114. As a direct and proximate result of the Defendants' actions, SMILE MORE®

has been damaged.

115. As a direct and proximate result of the Defendants' conduct, SMILE MORE® has suffered irreparable harm to the valuable Smile More® marks, and other damages in an amount to be proved at trial.

116. Unless Defendants are enjoined, the valuable SMILE MORE® marks will continue to be irreparably harmed and likely to be diluted.

117. SMILE MORE® has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants' actions are allowed to continue.

**COUNT V – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER FLORIDA COMMON LAW**

118. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as if fully set forth herein.

119. This count is against all Defendants for trademark infringement and unfair competition under the common laws of the State of Florida.

120. Defendants' conduct, including its use of the "Smile M☺re" brand and https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 domains as source designators for consumer purchase of goods, including but not limited to clothing apparel, constitutes trademark infringement and unfair competition by creating, and continuing to create, a likelihood of confusion with Plaintiff's marks and related common law trademark rights in its SMILE MORE® brand, configurations, and merchandise sales for goods and services.

121. Defendants' conduct set forth above is also likely to cause mistake, or to

deceive as to the affiliation, connection, or association of Defendants with SMILE MORE® and its marks, or as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of the Florida common law.

122. On information and belief, Defendants were aware of SMILE MORE®'s business and its marks before they engaged in the infringing activities and adopted the infringing "Smile M☺re" brand, and Defendants knew of SMILE MORE®'s marks and related trademark rights in its brand, configurations, and merchandise sales for goods and services and related products before Defendants' own adoption and use of the "Smile M☺re" brand.

123. On information and belief, Defendants substantially copied SMILE MORE®'s marks and related trademark rights in its use of the "Smile M☺re" brand, configurations, and merchandise sales for goods and services with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill and reputation of Plaintiff.

124. The foregoing acts and conduct of Defendants constitute infringement and misappropriation of Plaintiffs' common law rights in its trademarks in violation of the common law of the State of Florida.

125. Defendants' acts and conduct constitute unfair competition from with Defendants have unlawfully benefitted.

126. Upon information and belief, Defendants' conduct was knowing, willful, and deliberate.

127. As a direct and proximate result of Defendants' actions, SMILE MORE® has been and will continue to be damaged.

128. As a direct and proximate result of Defendants' actions, SMILE MORE® has been and will continue to be irreparably harmed, including damage to its business and reputation, and will continue to be irreparably harmed unless and until

Defendants cease use of the "Smile M☺re" brand.

## COUNT VI – DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLA. STAT. § 501.201 *ET SEQ.*

129. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as if fully set forth herein.

130. This is a claim against all Defendants under the Florida Deceptive and Unfair Trade Practices Act pursuant to Fla. Stat. § 501.201 *et seq.*

131. SMILE MORE® and Defendants are commercial competitors.

132. Defendants' conduct, including its use of the "Smile M☺re" brand and https://www.ae.com/us/en/p/men/bottoms/joggers-sweatpants/ae-smiley-heavyweight-open-hem-sweatpant/2121_5405_006 & https://www.ae.com/us/en/p/men/tops/hoodies-sweatshirts/zip-up-hoodies-sweatshirts/ae-smiley-graphic-fleece-full-zip-sweatshirt/0186_2875_006 domains as source designators for consumer purchase of goods, including but not limited to clothing apparel, constitutes trademark infringement and unfair competition by creating, and continuing to create, a likelihood of confusion with Plaintiff's marks and related common law trademark rights in its SMILE MORE® brands, configurations, and merchandise sales for goods and services.

133. Defendants' conduct set forth above is also likely to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with SMILE MORE® and its marks, or as to the origin, sponsorship, or approval of Defendants' goods and services in violation of the Florida common law.

134. By the Defendants' use of the "Smile M☺re" brand on its products as set forth above, Defendants have made misleading representations as to the source their goods, and as to their affiliation with SMILE MORE®.

135. Defendants knew and were aware of SMILE MORE®'s business and its

marks before they engaged in the infringing activities and adopted the infringing use of the "Smile M☺re" brand and Defendants knew of Plaintiff's marks and related trademark rights in its SMILE MORE® brands, configurations, and merchandise sales for goods and services before Defendants' own adoption and use of the "Smile M☺re" brand for merchandise sales for goods and services, including but not limited to, clothing apparel.

136. On information and belief, Defendants substantially copied SMILE MORE®'s marks and related trademark rights in its use of the "Smile M☺re" brand, configurations, and merchandise sales for goods and services with the intention of deceiving and misleading customers, the relevant industry, and the public at large or wrongfully trading on the goodwill and reputation of Plaintiff.

137. Defendants have knowingly, willfully, and deliberately engaged in the foregoing actions in violation of the Florida Deceptive and Unfair Trade Practices Act.

138. The conduct complained of herein constitutes unfair and deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act as defined in Fla. Stat. § 501.203(3)(a)-(c).

139. The conduct complained of herein constitute unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

140. As a direct and proximate result of Defendants' actions, SMILE MORE® has been and will continue to be damaged.

141. As a direct and proximate result of Defendants' actions, SMILE MORE® has been and will continue to be irreparably harmed.

**COUNT VII – UNJUST ENRICHMENT**

142. SMILE MORE® hereby incorporates paragraphs 1 through 76 above as if fully set forth herein.

143. This count is against all Defendants and alleges that they have been unjustly enriched by their illegal and improper actions.

144. Defendants have controlled, misappropriated, and used SMILE MORE®'s trademarks for their own advantage. Defendants' conduct, including their use of the SMILE MORE® brand, constitutes trademark infringement and unfair competition by creating, and continuing to create a likelihood of confusion with Plaintiff's marks and related common law trademark rights in its brand, configurations, and commercial appearances.

145. Defendants' conduct set forth above is also likely to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with SMILE MORE® or as to the origin, sponsorship, or approval of Defendants' goods.

146. By use of the Defendants' brands set forth above, Defendants have made misleading representations as to the source of their goods, and as to the affiliation with SMILE MORE®.

147. Through SMILE MORE®'s continuous and exclusive use of their trademarks, SMILE MORE® has acquired common law rights in their marks.

148. Plaintiff possesses these common law rights in the same geographic areas that Defendants operate their business and sell their competing products and acquired them prior to Defendants' first use of their brands.

149. Through unlawful and improper conduct described above, Defendants have at the expense of SMILE MORE®, been conferred a benefit and unjustly enriched and should not be entitled to retain those benefits.

150. SMILE MORE® is entitled to restitution of the amount by which Defendants

were, and continue to be, unjustly enriched, and Defendants should be estopped from inequitably retaining such benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

A. That the Court adjudge SMILE MORE®'s registered mark of the United States Trademark Registration No. 4993299 willfully infringed by the Defendants.

B. That the Court adjudge SMILE MORE®'s registered mark of the United States Trademark Registration No. 4695492 willfully infringed by the Defendants.

C. That the Court adjudge that Defendants have unfairly competed with SMILE MORE® and that such unfair competition was willful.

D. That Defendants, their officers, agents, servants, employees, and attorneys, successors, and assigns, and all those in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, be enjoined from:

(1) Using any name, mark trade dress, indication of course or other identifier that is similar in whole or in part to any of SMILE MORE®'s marks.

(2) Doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendant, or their business or goods or services, emanate from or are connected with, sponsored by, or approved by SMILE MORE®.

(3) Aiding or abetting any other person in committing any of the acts prohibited by (1), (2) or (3) above.

E. That Defendants be ordered to turn over to Plaintiff, or destroy all products, advertising paraphernalia, clothing, prints, and other items, whether in

physical or electronic form, or other form, bearing any name, mark, trade dress, indication of source or other identifier that is similar in whole or in part to SMILE MORE®'s marks, or its names or imagery, including but not limited to products, advertising paraphernalia, clothing, prints, and other items, whether in physical, electronic, or other form, bearing the SMILE MORE® name, and branding.

F. That Defendants provide an accounting of profits made by Defendants as a result of the acts complained of herein.

G. That Plaintiff be awarded all profits derived by Defendants by reason of their infringement of SMILE MORE®'s trademark rights and unfair competition, and all other sums by which Defendants or its owners, members, or employees has been unjustly enriched.

H. That Plaintiff be awarded all damages incurred by reason of Defendants' trademark infringement of SMILE MORE®'s rights, and Defendants' unfair competition, including but not limited to lost profits, a reasonable royalty, loss of goodwill, and injury to SMILE MORE®'s reputation and goodwill.

I. That Defendants be required, in accordance with Section 34(a) of the U.S. Trademarks Act, 15 U.S.C. § 1116(a), to file with the Court, and serve upon Plaintiff, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court.

J. That this case be deemed exception under 15 U.S.C. § 1117(a), and that Plaintiff be awarded increased damages, including treble damages.

K. That an assessment and award of costs and attorneys' fees for this action be made against Defendants, including pursuant to 15 U.S.C. § 1117(a) and pursuant to Fla. Stat. §§ 501.2105 and 501.211(2).

L. That pursuant to Fla. Stat. § 501.211, a declaration be made that the

actions of Defendants complained of herein constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida's Deceptive and Unfair Trade Practices Act.

M. That a constructive trust be imposed on all monies derived from Defendants' use of its brands complained of herein, of SMILE MORE®'s trademarks, and all monies and property diverted by Defendants from SMILE MORE® as identified herein.

N. That Plaintiff be awarded prejudgment and post-judgment interest at the maximum rate allowed by law.

O. That Plaintiff be granted such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated this 25th day of September 2026.

*/s/Benjamin C. Haynes, Esq.*
Benjamin C. Haynes
FBN: 91139
Haynes Law Group, P.A.
Attorneys for Plaintiff
407 Wekiva Springs Road, Ste. 217
Longwood, FL 32779
P. (407) 960-7377 | F. (407) 636-6904
Email: Ben@hayneslegalgroup.com

# EXHIBIT A

An official website of the United States government Here's how you know



# Trademark search



Registration number 4695492

**Result 1 of 1** for 4695492



## Trademark

Smile More

**Wordmark**
SMILE MORE

**Serial number**
86342612

**Filing date**
2014-07-21

**Registration number**
*4695492*

**Registration date**
2015-03-03

**Status**
LIVE REGISTERED

**Status date**
2024-06-20

**Registration type**
PRINCIPAL

**Case status**
The registration has been renewed.

**Publication date**
2014-12-16

**Class**
016, 018, 025, 035

**TM5 Status**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

## Related Properties Information

Show in Case summary view

N/A

## Goods and services

Show in Case summary view

IC 016: Pens; Rubber bands; Stickers. | **First Use Anywhere:** *September 01, 2013* | **First Use in Commerce:** *September 01, 2013*

IC 018: Backpacks. | **First Use Anywhere:** *September 01, 2013* | **First Use in Commerce:** *September 01, 2013*

IC 025: Beanies; Shirts; Tank tops. | **First Use Anywhere:** *September 01, 2013* | **First Use in Commerce:** *September 01, 2013*

IC 035: On-line retail store services featuring apparel and clothing. | **First Use Anywhere:** *September 01, 2013* | **First Use in Commerce:** *September 01, 2013*

## Current owner

Show in Case summary view

**Name**
Roman Atwood

**Address**
927 Blacklich Road
Millersport OHIO 43046
UNITED STATES OF AMERICA

Feedback

**Entity type**
INDIVIDUAL

**Organized**
UNITED STATES

**Ownership transitions**
No assignments

## Mark information

Show in Case summary view

**Mark literal element**
SMILE MORE

**Standard character claim**
Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark type**
SERVICE MARK,TRADEMARK

**Mark drawing code**
(4) Standard character drawing

**Description**
N/A

**Translation**
N/A

**Transliteration**
N/A

**Disclaimer**
N/A

**Design codes**

## Basis information

Show in Case summary view

**Filed**
1(a)

**Currently**
1(a)

## Attorney information

Show in Case summary view

**Name**
Benjamin C. Haynes

**Address**
N/A

**Primary email**
Ben@hayneslegalgroup.com

**Docket number**
N/A

## Correspondence information

Show in Case summary view

**Name**
Benjamin C. Haynes

**Address**
Haynes Law Group
407 WEKIVA SPRINGS RD STE 217
LONGWOOD Florida 32779
United States

**Email**
Ben@hayneslegalgroup.com

Feedback

## Prosecution history and documents

Show in Case summary view

Documents only

| Date ↓ | Description | Document | Proceeding |
|---|---|---|---|

| | | |
|---|---|---|
| 2024-06-20 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| 2024-06-20 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| 2024-06-20 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| 2024-06-20 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| 2024-06-20 | Notice of Acceptance Renewal - Email | Notice of Acceptance Renewal - Email |

Items per page: 5 1 – 5 of 54

## Proceedings

Show in Case summary view

**Proceeding number**
92062027

**Filing date**
2015-08-12

**Status**
Terminated

**Status date**
2019-04-29

**TTAB proceedings details**
1 proceedings

**Defendant name**
Roman Atwood

**Address**
BENJAMIN C HAYNES
HAYNES & DE PAZ PA
407 WEKIVA SPRINGS RD STE 217
LONGWOOD, FL 32779, UNITED STATES

**Email**
ben@haynesanddepaz.com

**Plaintiff name**
Disorderly Kids, LLC

**Address**
JESSIE K REIDER
BUCHALTER NEMER APC
1000 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90017, UNITED STATES

**Email**
trademark@buchalter.com,jreider@buchalter.com,mseror@buchalter.com

Feedback

## International registration (Section 66a)

Show in Case summary view

N/A

## Foreign information

Show in Case summary view

N/A

## Maintenance

Show in Case summary view

## information

**Declaration**
§9 Renewal Granted
§8 (10 year) - Accepted

**Declaration of incontestability**
N/A

**Process status**
N/A

**Office action**
N/A

**Next form to file**
§8 Declaration and §9 Application for Renewal

**Earliest renewal date**
2034-03-03

**Latest renewal date without additional fee**
2035-03-05

**Latest renewal date with additional fee**
2035-09-04

About the USPTO • Search for patents • Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

**Receive updates from the USPTO**

Enter your email to subscribe or update your preferences

your@email.com **Subscribe**

Follow us

Feedback

# EXHIBIT B

An official website of the United States government Here's how you know



**Trademark**

SMILE MORE

**Wordmark**
SMILE MORE

**Serial number**
86822942

**Filing date**

**Registration date**

**Registration number**
*4993299*

**Status**

**Status date**

**Registration type**

**Case status**

**Publication date**

**Class**
003, 021, 025

**TM5 Status**

## Related Properties Information

Show in Case summary view

N/A

## Goods and services

Show in Case summary view

IC 003: Temporary tattoo transfers for use as cosmetics.

IC 021: Cups; Water bottles sold empty.

IC 025: Hats; One-piece play suits.

## Current owner

Show in Case summary view

**Ownership transitions**
No assignments

Feedback

## Mark information

Show in Case summary view

**Mark literal element**
SMILE MORE

**Standard character claim**

**Mark type**

**Mark drawing code**

**Description**
N/A

**Translation**
N/A

**Transliteration**
N/A

**Disclaimer**
N/A

**Design codes**

## Basis information

Show in Case summary view

N/A

## Attorney information

Show in Case summary view

N/A

## Correspondence information

Show in Case summary view

**Name**

**Address**

**Email**

## Prosecution history and documents

Show in Case summary view

Documents only

| Date ↓ | Description | Document | Proceeding |
|---|---|---|---|

Items per page: 5 0 of 0

## Proceedings

Show in Case summary view

N/A

## International registration (Section 66a)

Show in Case summary view

N/A

Feedback

## Foreign information

Show in Case summary view

N/A

## Maintenance information

Show in Case summary view

**Declaration**
N/A

**Declaration of incontestability**
N/A

**Process status**
N/A

**Office action**
N/A

**Next form to file**
N/A

**Earliest renewal date**
N/A

**Latest renewal date without additional fee**
N/A

**Latest renewal date with additional fee**
N/A

About the USPTO • Search for patents • Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

**Receive updates from the USPTO**

Enter your email to subscribe or update your preferences

your@email.com **Subscribe**

Follow us

Feedback

# EXHIBIT C

**matti** @FrazierMatti · 1h

Replying to @RomanAtwood

Roman - I fear you have another war to deal with. Dont let them make money off your brand.




Marco is 6'2" (1.88 m), wearing size large

**EIAPSYOP** @EIAPSYOP · 5h

@RomanAtwood Cease and desist ?




1 13

facebook Email or phone Password Log In Forgot Account?

## American Eagle's Post

Heard your closet needed some dopamine 💛 the AE | Smiley collab is live on ae.com
https://american-eagle.visitlink.me/jm4HyK












+2

127 64 comments 2 shares

Like Comment

Most relevant



**Kyle Stewart**
Someone is going to be getting a letter in the mail!!!

1d 16



**Thomas McLaughlin**
Social media team i would contact your legal team 😂😅

facebook Email or phone Password Log In Forgot Account?

American Eagle's Post

1d 29

**Ansli Luckey**
Roman Atwood has "Smile More" trademarked since 2014.

1d 3

**Jana Tyson Thomas**
Just out of curiosity how can you use Smile More when it is trademarked??

1d 10

View 1 reply

**Ben Benoit**
It's literally the same smiley 😭

1d 5

**Clover Burton**
Could never do it like **Roman** & **Brittney** 😌😏

1d 3

**Jonny Howell**
Definitely don't own smile more. **Roman Atwood** does. Definitely not legal bahaha

1h

**Alexis Vieira**
Uh oh lawyer up 😯🤣

1d 2

**Katie M. Pitre**
**Roman Atwood** has "Smile More" trademarked since 2014.. Those pants could be problematic..

1d 22



**Rob Neal**
Somebody is going to owe Roman some royalties for using his trademarked term on their brand **American Eagle**

1d 3



**Jeremy McLaughlin**
**Roman Atwood Roman Atwood Vlogs Brittney Atwood The Smile More Store Smile More Laundry & Tan**

1d 4

**Paul Jeffries**

facebook Email or phone Password Log In Forgot Account?

American Eagle's Post

Ansli Luckey
**Smiley** Roman Atwood Trademarked smile more in 2014

19h

Melissa Cornell
**Roman Atwood Brittney Atwood**

1d

Alex Sandoval
**Roman Atwood**

1d

Allison Meidinger
**Roman Atwood Brittney Atwood**

1d

Melissa Lynn




1d 2



Kelley Mitchell



facebook Email or phone Password Log In Forgot Account?

American Eagle's Post

Raiden Walker
Roman Atwood

1d 3

Kyle Vincent




1d 5

Chris Flisek
Roman Atwood Brittney Atwood Smile More Laundry & Tan

1d 2

Steffie Parrish McDonald
Roman Atwood

1d 4

Haley Brennan
Roman Atwood

1d 5

Prestin Buchanan
Roman Atwood

1d 5



**LJ Wineberg**
Roman Atwood

1d 5 👍



**Téa Fell**
**Roman Atwood Brittney Atwood**

1d 5 👍



**Devin Jones**
**Roman Atwood Brittney Atwood**

facebook Email or phone Password Log In Forgot Account?

American Eagle's Post

1d 5

Chris Flisek
**Roman Atwood Brittney Atwood Smile More Laundry & Tan**

1d 2

Steffie Parrish McDonald
**Roman Atwood**

1d 4

Haley Brennan
**Roman Atwood**

1d 5

Prestin Buchanan
**Roman Atwood**

1d 5

LJ Wineberg
Roman Atwood

1d 5

Téa Fell
**Roman Atwood Brittney Atwood**

1d 5

Devin Jones
**Roman Atwood Brittney Atwood**

1d 4

Promise Trease
**Roman Atwood,**

1d 4



Dillan Martin
**Brittney Atwood Roman Atwood Smile More Laundry & Tan**

1d 4



Joseph Warren
**Roman Atwood**

1d 5



Liam Carter
**Roman Atwood Brittney Atwood Smile More Laundry & Tan**

# EXHIBIT D

HAYNES LAW GROUP
*407 Wekiva Springs Road, Suite 217*
*Longwood, Florida 32779*
*407-960-7377*

**May 7, 2026**

**VIA CERTIFIED MAIL: 7017 2680 0000 3474 5406**
**Kelly IP**
**c/o Saul Cohen**
**1150 Connecticut Avenue, NW, Suite 600**
**Washington, DC 20036**

**Re: Response to April 20, 2026, Letter on behalf of American Eagle Outfitters.**

This firm represents Roman Atwood and Smile More Intellectual Holdings, LLC. As stated in our initial Demand Letter, it has come to our attention that American Eagle Outfitters, more specifically the American Eagle Outfitters stores and websites, are now knowingly and purposefully infringing upon Mr. Atwood's trademarks. This letter serves as a response to the letter we received from you on April 20, 2026.

In your letter dated April 20, 2026, you stated that the source of the products in question is so clearly identified that no reasonable consumer would view the products as "anything other than what they are." However, in our first letter, we attached exhibits of Mr. Atwood's fans being confused as to whether the products in question have something to do with Mr. Atwood and his brand name "Smile More." This clearly establishes that there is confusion among reasonable consumers. Even one consumer congratulated Mr. Atwood on his "partnership" with American Eagle.

Secondly, your letter states that the "Smile More" featured on your client's clothing, with the smiley face serving as the "o" in "more," is visually distinct from our client's use of "Smile More." However, the visual distinction is not what is at contention here. Mr. Atwood has already demonstrated the secondary meaning of "Smile More" with the United States Patent and Trademark Office (USPTO) in the case of *Disorderly Kids, LLC. v. Roman Atwood,* Cancellation

proceeding 92062027. The "Smile More" mark itself is associated with and has a secondary meaning to Roman Atwood, since he is such a prominent public figure. When people hear or see the phrase "Smile More" they immediately think of Roman Atwood because of his large public image. The USPTO has already stated in this in the case mentioned above. When the petitioner tried to state that Roman Atwood could not own such a "generic" mark, the USPTO shot down this assertion due to the secondary meaning that the mark has.

Here, the use of the phrase "Smile More" on American Eagle's clothing has the same effect. When consumers see this clothing, they immediately think of Roman Atwood, as shown in the exhibits that we have provided in the first letter our office sent. The USPTO even stated in the case referenced above, in the final judgment, "The designation SMILE MORE as it appears on Respondent's goods conveys to the public a secondary source, namely, Respondent Roman Atwood, his YouTube channel and content he posts there, and registrable on the Principal Register." The USPTO further stated "Based upon our determination that SMILE MORE functions as a mark, and the Section 7(b) presumptions to which that mark is entitled by virtue of the Registration, there is no need for Respondent to make a showing of acquired distinctiveness under Section 2(f)."

Again, it is not the stylizations or the visual distinction that plays a role here, but merely the use of the phrase "Smile More" and how it relates to our client and his federally registered mark. The mere use of the phrase results in confusion to the reasonable consumer as we have already shown. You cited the case of *Moose Creek, Inc. v. Abercrombie & Fitch Co.,* 331 F. Supp. 2d 1214 (C.D. Cal. 2004) in your letter. The distinction between that case and the issue at hand is that case dealt with images of a moose. When it comes to registering images, a special or certain style of image can be registered, but an overall "moose" in any stylization cannot be registered as a mark. Here, we have a phrase that is directly associated with our client.

The fact that these clothing items are associated with The Smiley Company or can only be purchased through AE websites has no effect on the current issue. Just because the items can only be purchased at AE stores or through AE websites, does not mean that there cannot be confusion. That is in a sense, where the confusion is drawn from. Roman Atwood sells his merchandise on one website only. The fact that consumers who are fans of Roman Atwood are now seeing "Smile

More" on AE's website, and are associating that with Roman Atwood, is where the confusion stems. Again, many fans have posted on social media websites targeting these specific items of clothing and associating it with Roman Atwood. While consumers that purchase these items are aware they are getting them through AE, these same consumers do not know whether AE has partnered with Roman Atwood.

The mere conclusion of consumers not perceiving SMILE MORE (the "o" being replaced with the smile face logo) as a trademark of Roman Atwood, is not supported by the facts that we have alleged in our previous letter, along with the exhibits that we attached. Stating that the phrase "will be" interpreted as a play on The Smiley Company's logo being used within the phrase of "SMILE MORE" is again not supported by the facts that we have alleged. Consumers continue to confuse these products as being associated with Roman Atwood and the harm that results from it continues to occur.

Mr. Atwood reasserts all the previous demands in the first letter that our office sent. You claiming to sell out the Smile More merchandise and not order more, is unacceptable. Second, Mr. Atwood demands to be compensated for the continuing harm that results from these products that are using his trademark being on the market. Mr. Atwood will accept $500,000.00 as a settlement to amicably resolve this dispute.

If compliance is not to our satisfaction, we reserve the right to seek injunctive relief, treble damages and monetary damages in federal court, including attorney's fees and costs. You have twenty (20) days to respond.

Govern yourself accordingly.

Sincerely,

*<u>/s/Benjamin C. Haynes, Esq.</u>*
Benjamin C. Haynes, Esq.
Florida Bar No. 91139
Haynes Law Group, P.A.
407 Wekiva Springs Road
Longwood, FL 32779
Telephone: (407) 960-7377
Email: <u>Ben@hayneslegalgroup.com</u>

HAYNES LAW GROUP
Haynes Law Group, P.A.
407 Wekiva Springs Rd., Ste. 217
Longwood, FL 32779

**Kelly IP**
**c/o Saul Cohen**
**1150 Connecticut Avenue, NW, Suite 600**
**Washington, DC 20036**

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kelly IP c/o Saul Cohen
1150 Connecticut Ave, NW, Ste 600
Washington, DC 20036

9590 9402 4332 8190 5971 97

2. Article Number *(Transfer from service label)*

7017 2680 0000 3474 5406

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®

7017 2680 0000 3474 5406
7017 2680 0000 3474 5406

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
**Total Postage and Fees**
$

Postmark Here

*Sent To* Kelly IP c/o Saul Cohen
*Street and Apt. No., or PO Box No.* 1150 Connecticut Ave NW, Ste 600
*City, State, ZIP+4®* Washington DC 20036

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

KellyIP
www.kelly-ip.com

**Saul Cohen**
(202) 908-4785
saul.cohen@kelly-ip.com

**FRE 408 CONFIDENTIAL SETTLEMENT COMMUNICATION**

June 2, 2026

Benjamin C. Haynes **VIA EMAIL**
Jared Grow
Haynes Law Group, P.A.
407 Wekiva Springs Road
Longwood, FL 32779
ben@hayneslegalgroup.com
jared@hayneslegalgroup.com

Re: Response to May 13, 2026 letter on behalf of Roman Atwood and Smile More Intellectual Holdings, LLC

Counsel:

We write on behalf of American Eagle Outfitters, Inc. ("AE") in response to your May 13, 2026 letter continuing to accuse AE of trademark infringement for offering products that display SMILE M☺RE. We continue to disagree with your contention that AE's actions constitute trademark infringement, and we address your arguments below.

First, contrary to your assertion, your letter did not "attach[] exhibits of Mr. Atwood's fans being confused as to whether the products in question have something to do with Mr. Atwood and his brand name 'Smile More.'" Every such exhibit shows comments from people who understand that there is no relationship between the accused products and Mr. Atwood, and who thus are clearly ***not*** confused. A few representative examples are shown below:

- "Roman – I fear you have another war to deal with. Dont let them make money off your brand."
- "@RomanAtwood Cease and desist ?"
- "Definitely don't own smile more. **Roman Atwood** does. Definitely not legal bahaha"
- "Somebody is going to owe Roman some royalties for using his trademarked term on their brand **American Eagle**"

All of these posts correctly presuppose that AE ***has not*** partnered with Roman Atwood, and that the accused products are not authorized by or affiliated with Atwood. These accusations of misconduct against AE, while misguided about the law, negate your assertions of confusion. Indeed, even genuine "[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion" because "such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself."

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001). And compared to mere inquiries, the exhibits to your letter are far clearer examples of statements conclusively exhibiting a lack of confusion among the relevant consumers. These statements thus support AE's defenses, not your client's claims.

Your letter states that "[e]ven one consumer congratulated Mr. Atwood on his 'partnership with American Eagle.'" However, you have omitted crucial context making clear that this is yet another example of a Roman Atwood fan who understands that AE has not partnered with Atwood, as shown below.







The use of this post as purported evidence of actual confusion to try to leverage a $500,000 payment, when you know full well that the context of the post shows the opposite, amounts to unclean hands. *See De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 2005 WL 1164073, at *4 (S.D.N.Y. May 18, 2005) (unclean hands defense applies when "plaintiffs have misused their trademarks or trade identities in furtherance of inequitable conduct"). Moreover, any attempt to misleadingly use manufactured confusion evidence to support a trademark infringement lawsuit would be sanctionable. *See, e.g.*, *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 853 (S.D. Tex. 2016) (trademark plaintiff fabricated evidence to support claims; court dismissed lawsuit with prejudice, cancelled plaintiff's trademark registrations, granted Rule 11 sanctions, and awarded attorneys' fees).

Second, you acknowledge the visual distinction between the parties' respective uses of the accused phrase, but say that "the visual distinction is not what is at contention here" and suggest that Mr. Atwood's ownership of a registration for the phrase SMILE MORE in standard-character form means that use of the same phrase, regardless of stylization, amounts to infringement.[1] That is incorrect as a matter of black-letter trademark law. As we noted in our initial response, "[a] standard character registration does not override the requirement that likelihood of confusion be measured by the perceptions of consumers in the marketplace, including the effect of packaging" and the factfinder in an infringement action "must consider the effect of marketplace presentation, including 'lettering styles, logos and coloring schemes.'" *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1002 & n.2 (10th Cir. 2014); *see also* McCarthy on Trademarks and Unfair Competition § 23:52 (5th ed.). The fact that Mr. Atwood obtained a nonprecedential Trademark Trial and Appeal Board decision in a particular party's cancellation proceeding is not pertinent to your assertions of infringement because, unlike courts assessing infringement claims, "the Trademark Board will consider only the mark as shown and described in an application or registration, not as actually used in the marketplace." McCarthy § 23:52.

Likewise, the use on the accused products of AE's AMERICAN EAGLE mark and The Smiley Company's SMILEY and Smiley face marks negates any possible confusion. For example, the Sixth Circuit held that the defendant's use of BRAUN house mark along with the THERMOSCAN product name weighed against confusion in a claim brought by the owner of the THERMA-SCAN trademark, and granted summary judgment to the defendant. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 634 (6th Cir. 2002) (noting that the "labeling [with the BRAUN mark] diminishes the likelihood of confusion created by the comparable marks").

Accordingly, the visual dissimilarities between the parties' offerings are both relevant and dispositive here.

Third, you state that "[w]hen people hear or see the phrase 'Smile More' they immediately think of Roman Atwood because of his large public image." Whether or not this is true (which AE disputes), the hypothetical fact that the accused products make people "think of Roman Atwood" would not be evidence of the likelihood of confusion. *See, e.g.*, *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1295 (11th Cir. 2018) ("That a junior user's trade dress merely calls to mind that of the senior user … is not an infringement."); *Katz v. Modiri*, 283 F. Supp. 2d 883, 894 (S.D.N.Y. 2003) ("The fact that a junior user's mark might call to mind the senior user's mark is not sufficient for a likelihood of confusion.").

Finally, your letter ignores the fact that AE's use of SMILE M☺RE is not as a trademark. Your client chose as his alleged trademark a common phrase about encouraging happiness, used by many in its expressive and descriptive sense. Having done so, Mr. Atwood "'cannot altogether exclude some kinds of competing uses,' particularly those which use words in their primary descriptive and non-trademark sense." *U.S. Shoe Corp. v. Brown Grp., Inc.*, 740 F.

[1] From your letter: "When it comes to registering images, a special or certain style of image can be registered, but an overall 'moose' in any stylization cannot be registered as a mark. Here, we have a phrase that is directly associated with our client."

Kelly IP, LLP
1150 Connecticut Ave., NW | Suite 600 | Washington, DC | 20036
Phone | (202) 808-3570 | Fax | (202) 354-5232

Supp. 196, 198 (S.D.N.Y.), *aff'd*, 923 F.2d 844 (2d Cir. 1990). Indeed, even if AE's use of the common phrase SMILE M☺RE were likely to cause confusion as to source, sponsorship, or affiliation (and it is not), AE would be entitled to an affirmative defense against Mr. Atwood's claims because it is using the phrase in good faith and purely in its descriptive sense, and not as a trademark for its own goods or services. *See* 15 U.S.C. § 1115(b)(4) (defining fair use as "a use, otherwise than as a mark, of ... a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party ..."); *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (finding fair use where defendant used "Seal it with a Kiss!!" with cosmetic products, despite plaintiff's ownership of trademark registration for SEALED WITH A KISS); *B&L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir. 1970) (finding fair use where defendant used the phrase "Come on Strong" in connection with its clothing, despite plaintiff's ownership of trademark registration for COME ON STRONG for clothing; noting that the phrase "describe[ed] a presumably desirable effect" of defendant's clothing).

Accordingly, AE again rejects Mr. Atwood's unreasonable demands. In our April 20, 2026 letter, AE offered to cease offering products that display SMILE M☺RE on its own (apart from a larger phrase) after it has sold through its current inventory of such products. In the interest of avoiding further expense, AE is willing to agree not to sell any such products after July 31, 2026. We look forward to receiving your confirmation that your client accepts this resolution. We remain willing to discuss further if you believe that would be helpful. However, if your client elects to proceed despite AE's offer to cease offering such products, AE is fully prepared to defend itself and will pursue any appropriate counterclaims.

This letter is not a complete statement of AE's rights in connection with this matter, and nothing in this letter constitutes an express or implied waiver of any rights, remedies, or defenses, all of which are expressly reserved.

Sincerely,

Saul Cohen

Kelly IP, LLP
1150 Connecticut Ave., NW | Suite 600 | Washington, DC | 20036
Phone | (202) 808-3570 | Fax | (202) 354-5232

HAYNES LAW GROUP
*407 Wekiva Springs Road, Suite 217*
*Longwood, Florida 32779*
*407-960-7377*

**May 13, 2026**

**VIA EMAIL:**
**Kelly IP**
**c/o Saul Cohen**
**saul.cohen@kelly-ip.com**

**Re: Response to April 20, 2026, Letter on behalf of American Eagle Outfitters.**

This firm represents Roman Atwood and Smile More Intellectual Holdings, LLC. As stated in our initial Demand Letter, it has come to our attention that American Eagle Outfitters, more specifically the American Eagle Outfitters stores and websites, are now knowingly and purposefully infringing upon Mr. Atwood's trademarks. This letter serves as a response to the letter we received from you on April 20, 2026.

In your letter dated April 20, 2026, you stated that the source of the products in question is so clearly identified that no reasonable consumer would view the products as "anything other than what they are." However, in our first letter, we attached exhibits of Mr. Atwood's fans being confused as to whether the products in question have something to do with Mr. Atwood and his brand name "Smile More." This clearly establishes that there is confusion among reasonable consumers. Even one consumer congratulated Mr. Atwood on his "partnership" with American Eagle.

Secondly, your letter states that the "Smile More" featured on your client's clothing, with the smiley face serving as the "o" in "more," is visually distinct from our client's use of "Smile More." However, the visual distinction is not what is at contention here. Mr. Atwood has already demonstrated the secondary meaning of "Smile More" with the United States Patent and Trademark Office (USPTO) in the case of *Disorderly Kids, LLC. v. Roman Atwood,* Cancellation

proceeding 92062027. The "Smile More" mark itself is associated with and has a secondary meaning to Roman Atwood, since he is such a prominent public figure. When people hear or see the phrase "Smile More" they immediately think of Roman Atwood because of his large public image. The USPTO has already stated in this in the case mentioned above. When the petitioner tried to state that Roman Atwood could not own such a "generic" mark, the USPTO shot down this assertation due to the secondary meaning that the mark has.

Here, the use of the phrase "Smile More" on American Eagle's clothing has the same effect. When consumers see this clothing, they immediately think of Roman Atwood, as shown in the exhibits that we have provided in the first letter our office sent. The USPTO even stated in the case referenced above, in the final judgment, "The designation SMILE MORE as it appears on Respondent's goods conveys to the public a secondary source, namely, Respondent Roman Atwood, his YouTube channel and content he posts there, and registrable on the Principal Register." The USPTO further stated "Based upon our determination that SMILE MORE functions as a mark, and the Section 7(b) presumptions to which that mark is entitled by virtue of the Registration, there is no need for Respondent to make a showing of acquired distinctiveness under Section 2(f)."

Again, it is not the stylizations or the visual distinction that plays a role here, but merely the use of the phrase "Smile More" and how it relates to our client and his federally registered mark. The mere use of the phrase results in confusion to the reasonable consumer as we have already shown. You cited the case of *Moose Creek, Inc. v. Abercrombie & Fitch Co.,* 331 F. Supp. 2d 1214 (C.D. Cal. 2004) in your letter. The distinction between that case and the issue at hand is that case dealt with images of a moose. When it comes to registering images, a special or certain style of image can be registered, but an overall "moose" in any stylization cannot be registered as a mark. Here, we have a phrase that is directly associated with our client.

The fact that these clothing items are associated with The Smiley Company or can only be purchased through AE websites has no effect on the current issue. Just because the items can only be purchased at AE stores or through AE websites, does not mean that there cannot be confusion. That is in a sense, where the confusion is drawn from. Roman Atwood sells his merchandise on one website only. The fact that consumers who are fans of Roman Atwood are now seeing "Smile

More" on AE's website, and are associating that with Roman Atwood, is where the confusion stems. Again, many fans have posted on social media websites targeting these specific items of clothing and associating it with Roman Atwood. While consumers that purchase these items are aware they are getting them through AE, these same consumers do not know whether AE has partnered with Roman Atwood.

The mere conclusion of consumers not perceiving SMILE MORE (the "o" being replaced with the smile face logo) as a trademark of Roman Atwood, is not supported by the facts that we have alleged in our previous letter, along with the exhibits that we attached. Stating that the phrase "will be" interpreted as a play on The Smiley Company's logo being used within the phrase of "SMILE MORE" is again not supported by the facts that we have alleged. Consumers continue to confuse these products as being associated with Roman Atwood and the harm that results from it continues to occur.

Mr. Atwood reasserts all the previous demands in the first letter that our office sent. You claiming to sell out the Smile More merchandise and not order more, is unacceptable. Second, Mr. Atwood demands to be compensated for the continuing harm that results from these products that are using his trademark being on the market. Mr. Atwood will accept $500,000.00 as a settlement to amicably resolve this dispute.

If compliance is not to our satisfaction, we reserve the right to seek injunctive relief, treble damages and monetary damages in federal court, including attorney's fees and costs. You have twenty (20) days to respond.

Govern yourself accordingly.

Sincerely,

*/s/Benjamin C. Haynes, Esq.*
Benjamin C. Haynes, Esq.
Florida Bar No. 91139
Haynes Law Group, P.A.
407 Wekiva Springs Road
Longwood, FL 32779
Telephone: (407) 960-7377
Email: Ben@hayneslegalgroup.com

# EXHIBIT E

**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## TTABVUE. Trademark Trial and Appeal Board Inquiry System v2.9.0

# Cancellation

**Number:** 92062027 **Filing Date:** 08/12/2015
**Status:** Terminated **Status Date:** 04/29/2019
**General Contact Number:** 571-272-8500
**Interlocutory Attorney:** WINSTON T FOLMAR
**Paralegal Name:** KARL S KOCHERSPERGER

**Defendant**

**Name:** Roman Atwood
**Correspondence:** BENJAMIN C HAYNES
HAYNES & DE PAZ PA
407 WEKIVA SPRINGS RD STE 217
LONGWOOD, FL 32779
UNITED STATES
ben@haynesanddepaz.com
Phone: 407-960-7377

**Applications/registrations**

**Serial #:** 86342612 Application File Assignment **Registration #:** 4695492
**Application Status:** REGISTERED AND RENEWED
**Mark:** SMILE MORE

**Plaintiff**

**Name:** Disorderly Kids, LLC
**Correspondence:** JESSIE K REIDER
BUCHALTER NEMER APC
1000 WILSHIRE BLVD, STE 1500
LOS ANGELES, CA 90017
UNITED STATES
trademark@buchalter.com, jreider@buchalter.com, mseror@buchalter.com
Phone: 213-891-0700

**Prosecution History**

| # | Date | History Text | Due Date |
|---|---|---|---|
| 51 | 04/29/2019 | TERMINATED | |
| 50 | 01/07/2019 | FINAL DECISION: CAN DENIED | |
| 49 | 11/20/2018 | FINAL DECISION: CAN DENIED | |
| 48 | 07/11/2018 | SUBMITTED ON BRIEF | |
| 47 | 06/28/2018 | P OBJECTION TO WIT DECL OF RAMON AWOOD | |
| 46 | 06/06/2018 | DUPLICATE FILING (NOT CONSIDERED) | |
| 45 | 06/06/2018 | D COMMUNICATION | |
| 44 | 06/05/2018 | P SUPP TRIAL BRIEF | |
| 43 | 03/30/2018 | TRIAL DATES RESET | |

**Prosecution History**

| # | Date | History Text | Due Date |
|---|---|---|---|
| 42 | 01/03/2018 | P REPLY IN SUPPORT OF MOTION | |
| 41 | 12/19/2017 | SUSP PEND DISP OF OUTSTNDNG MOT | |
| 40 | 12/18/2017 | D OPP/RESP TO MOTION | |
| 39 | 12/13/2017 | P MOT TO STRIKE TESTIMONY | |
| 38 | 12/05/2017 | D FINAL BRIEF: TM RULE 2.128 | |
| 37 | 12/05/2017 | D CONF TRIAL BRIEF | |
| 36 | 11/08/2017 | P FINAL BRIEF: TM RULE 2.128 | |
| 35 | 07/31/2017 | D NOTICE OF RELIANCE | |
| 34 | 07/19/2017 | TRIAL DATES RESET | |
| 33 | 04/27/2017 | D OPP/RESP TO MOTION | |
| 32 | 04/26/2017 | SUSP PEND DISP OF OUTSTNDNG MOT | |
| 31 | 04/25/2017 | P MOT TO STRIKE NOTICE OF RELIANCE | |
| 30 | 04/13/2017 | D NOTICE OF RELIANCE | |
| 29 | 04/13/2017 | D NOTICE OF RELIANCE | |
| 28 | 04/13/2017 | D'S DECLARATION | |
| 27 | 03/13/2017 | D'S CONF WITHESS TESTIMONY | |
| 26 | 03/13/2017 | EXTENSION OF TIME GRANTED | |
| 25 | 03/09/2017 | D MOT FOR EXT W/ CONSENT | |
| 24 | 03/07/2017 | D MOT FOR EXT W/O CONSENT | |
| 23 | 02/15/2017 | TRIAL DATES RESET | |
| 22 | 12/01/2016 | D OPP/RESP TO MOTION | |
| 21 | 12/01/2016 | SUSPENDED | |
| 20 | 12/01/2016 | P PET TO DISQUALIFY D COUNSEL | |
| 19 | 11/01/2016 | P NOTICE OF RELIANCE | |
| 18 | 10/31/2016 | P NOTICE OF RELIANCE | |
| 17 | 09/27/2016 | TRIAL DATES RESET | |
| 16 | 09/21/2016 | D MOT TO QUASH | |
| 15 | 09/20/2016 | RESPONSE DUE | |
| 14 | 09/20/2016 | D MOT TO QUASH | |
| 13 | 05/31/2016 | TRIAL DATES REMAIN AS SET | |
| 12 | 05/26/2016 | D'S MT TO WD MT TO COMPEL DISCOVERY | |
| 11 | 05/25/2016 | D MOT TO COMPEL DISCOVERY | |
| 10 | 12/11/2015 | TRIAL DATES RESET | |
| 9 | 12/02/2015 | AMENDED ANSWER | |
| 8 | 11/16/2015 | P MOT TO AMEND PLEADING/AMENDED PLEADING | |
| 7 | 10/20/2015 | TRIAL DATES RESET | |
| 6 | 09/29/2015 | P REQ FOR DISCOVERY CONFERENCE-ESTTA | |
| 5 | 09/16/2015 | ANSWER | |
| 4 | 09/16/2015 | D APPEARANCE / POWER OF ATTORNEY | |
| 3 | 08/14/2015 | PENDING, INSTITUTED | |
| 2 | 08/14/2015 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | 09/23/2015 |
| 1 | 08/12/2015 | FILED AND FEE | |

Results as of 09/23/2026 10:36 AM

**Search:**

Case 6:26-cv-02240-PGB-CAB Document 4 Filed 09/28/26 Page 66 of 72 PageID 230

THIS OPINION IS NOT A PRECEDENT OF THE TTAB

Mailed: January 7, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*Disorderly Kids, LLC.*
*v.*
*Roman Atwood*

Cancellation No. 92062027

Matthew L. Seror and Jessie K. Reider of Buchalter Nemer APC for Disorderly Kids, LLC.

Benjamin C. Haynes of Haynes & de Paz PA for Roman Atwood.

Before Cataldo, Lykos and Adlin, Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

On November 20, 2018, the Board issued a final decision ("Decision") on the merits of this cancellation.[1] In our Decision, we found that Disorderly Kids, LLC ("Petitioner"), demonstrated its standing[2] to be heard on the pleaded claims in its amended petition for cancellation,[3] namely, that the term SMILE MORE comprising Roman Atwood's ("Respondent") mark is "a common expression and does not function

[1] 49 TTABVUE.

[2] *Id*. at 4-5.

[3] 8 TTABVUE.

as a mark";[4] and in the alternative, in the event that it functions as a mark, it is only entitled to registration if it has acquired distinctiveness, which it has not.[5]

We made the following findings based upon the evidence of record:

(1) The subject Reg. No. 4695492[6] issued on the Principal Register without a showing of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), and thus is entitled to the following presumption under Trademark Act Section 7; 15 U.S.C. § 1057:

> (b) *Certificate as prima facie evidence.* A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.[7]

(2) The specimens of use submitted with the application underlying the Registration display the SMILE MORE mark on the goods in an ornamental manner. However, in this case the specimens of use for Respondent's services display SMILE MORE in a non-ornamental manner, associate the SMILE MORE mark with "The Official Smile More Store" and "Roman Atwood Pranks" YouTube channel and clearly associate the SMILE MORE mark with Respondent.[8]

---

[4] *Id*. at 5.

[5] *Id*. at 6.

[6] Reg. No. 4695492, for the mark SMILE MORE in standard characters, identifies "Pens, rubber bands, stickers," in International Class 16; "Backpacks," in International Class 18; "Beanies, shirts, tank tops," in International Class 25; and "On-line retail store services featuring apparel and clothing," in International Class 35.

[7] 49 TTABVUE 18.

[8] *Id*. at 18-19.

(3) The designation SMILE MORE as it appears on Respondent's goods conveys to the public a secondary source, namely, Respondent Roman Atwood, his YouTube channel and the content he posts there, and is registrable on the Principal Register.[9]

(4) A modest number of third parties have produced and sold goods, including t-shirts, hats and stickers, bearing the decorative or ornamental wording "Smile More" and formatives thereof. Respondent actively and vigorously polices his SMILE MORE mark and views such uses as infringement. Respondent has successfully prevented or stopped such uses by the very third parties Petitioner relies upon for its assertion of widespread use of "Smile More" in connection with the relevant goods and services. Fans of Respondent actively report such uses when they encounter them. In addition, certain of the third-party users point to Respondent when advertising their "Smile More" merchandise in an attempt to associate their goods with him.[10]

(5) Eight third parties have registered SMILE MORE and SMILE formative marks for goods and services unrelated to the goods and services recited in the subject Registration. Evidence of "Smile More" so used does not support Petitioner's assertion of "myriad third party uses of the phrase 'Smile More'"[11] in connection with the relevant goods and services.[12]

(6) The record evidence supports a finding that SMILE MORE, as used in connection with the goods and services recited in the Registration, serves to indicate

---

[9] *Id*. at 19.

[10] *Id*. at 19-20.

[11] 36 TTABVUE 9.

[12] *Id*. at 20-21.

a single origin or source, namely Respondent. The existence of a very small number – namely, six – third-party uses of "Smile More" in connection with related goods does not suggest a different outcome, especially given evidence that at least half of the uses have ceased upon challenges from Respondent as well as his assertions that all uses, aside from Petitioner, have ceased due to his policing of his mark.[13]

Having considered all the evidence and arguments of record, we found in our Decision that Petitioner failed to meet its burden of demonstrating that SMILE MORE, as it appears in the Registration in connection with the recited goods and services, does not function as a trademark for Respondent's goods.

Based upon the evidence and arguments of record, our Decision is hereby **clarified as follows:**

The subject Registration issued on the Principal Register without resort to a claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), and carries the presumptions discussed above under Trademark Act Section 7; 15 U.S.C. § 1057;

Based upon our determination that SMILE MORE functions as a mark, and the Section 7(b) presumptions to which the mark is entitled by virtue of the Registration, there is no need for Respondent to make a showing of acquired distinctiveness under Section 2(f);

Accordingly, Petitioner's alternative claim that SMILE MORE has not acquired distinctiveness is dismissed.

---

[13] *Id.* at 21.

**Decision:** The petition to cancel Reg. No. 4695492 is dismissed on both pleaded grounds.

## TTABVUE. Trademark Trial and Appeal Board Inquiry System v2.9.0

# Extension of Time

**Number:** 87330305 **Filing Date:** 07/19/2017
**Status:** Terminated **Status Date:** 10/29/2017
**General Contact Number:** 571-272-8500
**Paralegal Name:** ELLEN YOWELL
**Opposition #:**

**Defendant**

**Name:** Smile More Intellectual Holdings, LLC
**Correspondence:** BEN HAYNES
HAYNES & DE P
407 WEKIVA SPRINGS ROAD SUITE 217
LONGWOOD, FL 32779
ben@haynesanddepaz.com

**Serial #:** 87330305 Application File Assignment
**Application Status:** ABANDONED - NO STATEMENT OF USE FILED
**Mark:** OHIOLAND

**Potential Opposer**

**Name:** The Ohio State University
**Correspondence:** Samantha M. Quimby
Frost Brown Todd LLC
10 West Broad Street, Suite 2300
Columbus, OH 43215
UNITED STATES
Squimby@fbtlaw.com, fbtiplitigation@fbtlaw.com
Phone: 6145597282
**Granted To Date:** 10/18/2017

**Prosecution History**

| # | Date | History Text |
|---|---|---|
| 4 | 08/21/2017 | EXTENSION OF TIME GRANTED |
| 3 | 08/21/2017 | INCOMING - EXT TIME TO OPPOSE FILED |
| 2 | 07/19/2017 | EXTENSION OF TIME GRANTED |
| 1 | 07/19/2017 | INCOMING - EXT TIME TO OPPOSE FILED |

Results as of 09/23/2026 10:35 AM **Back to search results** **Search:**